UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

    GAYLORD HARDWARE LLC,                  Case No. 09-24018-dob
                                                              Chapter 7 Proceeding
                Debtor.                                      Hon. Daniel S. Opperman
_____/

Opinion Regarding First and Final Fee Application of
Kresch Oliver PLLC for Services Rendered as Counsel to the Debtor

Statement of Facts

Kresch Oliver PLLC ("Kresch Oliver") filed an application for fees in the amount of $43,768.75 and expenses of $2,326.23. The United States Trustee, mBank, Chapter 7 Trustee Randall Frank, and Walter Drzewiecki, Debtor's principal, filed objections to this application. The Court heard arguments regarding the application on April 30, 2010, and all parties indicated that no further proofs were necessary.

As a preliminary matter, Mr. Drzewiecki seeks not only denial of all fees requested by Kresch Oliver, but also the disgorgement of the retainer to the extent that the retainer was not used to prepare the Schedules and Statement of Financial Affairs. The Court heard argument from Mr. Drzewiecki regarding this point, but specifically reserved the issue of his arguments that the attorney primarily working on the case, Ms. Oliver, failed to communicate with him. The Court did not hear arguments regarding that issue because Ms. Oliver indicated that her defense of these allegations would implicate the attorney/client privilege. Since it initially appeared to the Court that only the Chapter 7 Trustee would be in a position to waive that attorney/client privilege, and counsel for the Trustee had not been apprised of this issue until the date and time of the hearing, the Court elected to reserve issues regarding communications to a later date, if need be.

The factual basis that the Court relies upon in reaching its decision is as follows. The Debtor

1

in this case, Gaylord Hardware LLC, and a related entity, Gaylord Feed & Grain Inc., experienced financial difficulty and was having difficulty negotiating with its major secured creditor, mBank. In order to help it along in those negotiations, Gaylord Hardware elected to file Chapter 11 with this Court. Ms. Oliver agreed to represent the Debtor and to prepare the necessary pleadings. It appears to this Court that in some instances Ms. Oliver performed her duties well, and others she did not. The Schedules, Statement of Financial Affairs, and other documents that are generally filed at the time a case is filed show that many documents were prepared correctly, but others were not. Most notably, the so-called first day motions filed with this Court were of inferior quality. In particular, references were made to trustees located in Delaware and other places, which suggest to this Court that the documents filed with this Court were more in the nature of form documents that had not been reviewed by the attorneys for the Debtor. As a result, a number of documents had to be corrected and re-filed and, as indicated by Ms. Oliver at the April 30, 2010, hearing, the request for fees for the re-filing was orally withdrawn by her.

The Debtor faced a very aggressive creditor that resorted to all rights available to it under the Bankruptcy Code. Facing this scenario, the Debtor was required to file a number of documents and responses that are often necessary in circumstances such as the ones presented to the Debtor in this case. Moreover, the Debtor drew the attention of the United States Trustee who filed documents early in this case seeking the dismissal or conversion of this case. Again, the Debtor was required to respond to these documents and ultimately present proofs at evidentiary hearings brought on by the motions of mBank and the United States Trustee.

At the evidentiary hearings held in November and December of 2009, Ms. Oliver did an excellent job in defending the Debtor's interest such that the Court denied the motion of the United States Trustee to dismiss, but also denied the Debtor's request for the full use of cash collateral. This required the Debtor, again through counsel, to attempt to negotiate the continued use of cash

collateral in late December, 2009, and early January, 2010. Given the status of the parties, consensual use of cash collateral on a long term basis was not possible and the Debtor again was required to file additional pleadings for the interim use of cash collateral. Although the Debtor and mBank agreed to a temporary use of cash collateral, it appears from the review of the record, as well as subsequent pleadings, that the Debtor simply was unable to continue financially along terms that would be required for the use of cash collateral.

As early as January, 2010, the main merchandise supplier of the Debtor, Ace Hardware, appeared and began to take an active role in this case. Accordingly, it became apparent that the Debtor's hope of continuation of a relationship with Ace Hardware was problematic, at best. Coupled with the inability to negotiate a resolution with mBank, the Debtor faced the prospect of having to obtain financing elsewhere, as well as trying to repair a severely damaged relationship with Ace Hardware. In late January and February of 2010, the Debtor, through counsel, attempted to obtain the use of cash collateral, but both attempts failed such that the Debtor withdrew each request and this case, as well as the Gaylord Feed & Grain case, were converted to Chapter 7. After conversion, Debtor's counsel sought approval of fees and the payment of the retainer currently held by Debtor's counsel.

## Analysis

As a general rule, an application for attorney fees is reviewed using a so-called "lodestar" approach, which is defined as multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended. *Boddy v. United States Bankruptcy Court, Western District of Kentucky (In re Boddy)*, 950 F.2d 334, 337-38 (6th Cir. 1991). Bankruptcy courts should consider the attorney's customary rate, comparable rates of comparable attorneys in the local area, the quality of legal services provided, the skill of the attorney, and the novelty or the difficulty of the issues presented. *Id.; see also Blum v. Stenson*, 465 U.S. 886, 895 (1984). The burden of proof is on the

professional requesting compensation for his or her services from the bankruptcy estate. *In re New Boston Coke Corp.*, 299 B.R. 432, 438 (Bankr. E.D. Mich. 2003). Additionally, bankruptcy attorneys are not entitled to compensation merely because the time recorded was actually expended. Billable hours do not necessarily translate into compensable hours. *Id.*

Applying these principles to the instant case, the Court initially notes that a number of entries are excessive for the services described in those entries or, alternatively, the description is not sufficient to substantiate the time expended. Most notably, the Court makes the following adjustments for the following entries that appear.

| *Date* | *Time Entry* | *Allowable Time* | *Time Reduced* |
| --- | --- | --- | --- |
| 11/04/09 | 16 | 8 | 8 |
| 11/14/09 | 16 | 1 | 15 |
| 11/18/09 | 4 | 1 | 3 |
| 11/19/09 | 2 | 1 | 1 |
| 11/23/09 | 4 | 2 | 2 |
| 11/24/09 | 10 | 2 | 8 |
| 11/29/09 | 2.25 | 1 | 1.25 |
| 12/01/09 | 1 | .2 | .8 |
| 12/16/09 | 4 | 1 | 3 |
| 12/17/09 | 8 | 4 | 4 |
| 12/23/09 | 8 | 1 | 7 |
| 12/28/09 | 3 | 2 | 1 |
| 01/25/10 | 6 | 5 | 1 |

Total Reduction: 55.05 hours at $235 per hour = $12,936.75

4

As Ms. Oliver forthrightly stated on April 30, 2010, there were a number of entries where she tried to cure various deficiencies. These entries will be completely disallowed.

| *Date* | *Time Entry* | *Allowable Time* |
| --- | --- | --- |
| 11/29/09 | 6 | 0 Completely Disallowed |
| 12/15/09 | 2 | 0 Completely Disallowed |
| 12/18/09 | 1.5 | 0 Completely Disallowed |
| 12/18/09 | .75 | 0 Completely Disallowed |
| 12/18/09 | .5 | 0 Completely Disallowed |

Total Reduction: 10.75 hours at $235 per hour = $2,526.25

Next, the Court concludes that some of the entries were clerical in nature and likewise will be disallowed. These entries are:

| *Date* | *Time Entry* | *Allowable Time* |
| --- | --- | --- |
| 11/19/09 | 1 | 0 Completely Disallowed |
| 12/17/09 | 1 | 0 Completely Disallowed |
| 12/17/09 | 1.25 | 0 Completely Disallowed |
| 01/28/10 | .3 | 0 Completely Disallowed |

Total Reduction: 3.55 hours at $235 per hour = $834.25

The Court also notes that the firm had an associate with less than one year of experience perform 5 hours of services in this case. The hourly rate charged for this associate was $235, which is excessive given that associate's clear lack of experience. The Court will only award an hourly rate of $175, which translates into another $300 reduction for that associate's services. Many entries in the application contained time in the hundredths, as opposed to tenths of an hour. There were 17 of these entries that were not previously reduced by the Court, so the Court likewise reduces the total hours by .85 which, when multiplied by the hourly rate of $235, results in a reduction of $199.75.

5

Finally, the United States Trustee vehemently argues that there came a point in time in January or February of 2010, when the Debtor should have been advised by Debtor's counsel that further action in this case was futile. In reviewing this case carefully, the Court concludes that one of the more difficult positions that an attorney must take is to advise his or her client that further action is not warranted. In this case, by mid to late January, 2010, it appears that the Debtor was simply not able to perform financially as required in order to continue the use of cash collateral or to attempt to reorganize. The Court concludes that time for cash collateral hearing preparation on January 25, 2010, totaling 17.5 hours was partially inappropriate and of limited benefit to the estate. Likewise, the time spent for the preparation for the cash collateral hearing on February 10, 2010, and the attendance at the cash collateral hearing on February 11, 2010, with the stated hours of 7 and 8.5, respectively, is not appropriate. By February 10, 2010, counsel and the Debtor both should have realized that further action regarding cash collateral was inappropriate. Accordingly, the Court will only allow 10 hours for the preparation for and the attendance at these evidentiary hearings. The Court's view is that 10 hours at $235 per hour is a sufficient award for the services that should have been provided and that were reasonably necessary to the Debtor in this case. The result is a total reduction of $5,405.00.

Before the Court closes, however, the Court notes that Ms. Oliver, at least in this Court's view, did an outstanding job in defending the Debtor from various motions filed and prosecuted by very experienced counsel on behalf of mBank and the United States Trustee. In particular, Ms. Oliver did an outstanding job in the defense of the motion to dismiss filed by the United States Trustee.

In reaching its final conclusion, the Court notes that there are no winners in this particular action. The individuals who own the Debtor have seen a significant source of their livelihood disappear. The counsel for the Debtor now stands the prospect of having devoted a considerable

amount of time and effort in a case with no opportunity for payment. mBank faces the distinct possibility of either not getting paid in full or waiting a long time to receive full payment.

After calculating all of the deductions that the Court has made, the Court concludes that a reduction of $22,202.00 is appropriate. Accordingly, the Court reduces the fees requested of $43,768.75 to $21,566.75. Expenses in the amount of $2,326.23 are awarded and, after advancement against costs of $2,078.00, leaves $248.23 as still owing for expenses.

Ms. Oliver is directed to prepare an order consistent with this Opinion.

cc: C. Douglas Moran
    Gaylord Hardware LLC

**Signed on July 16, 2010**

                                              **/s/ Daniel S. Opperman**
                                              **Daniel S. Opperman**
                                              **United States Bankruptcy Judge**